**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

```
_____
                              :
MICHAEL BOOKARD,              :    CIVIL ACTION
                              :
          Petitioner,         :
                              :
    v.                        :    NO. 05-5740
                              :
FRANKLIN J. TENNIS,           :
et al.,                       :
                              :
          Respondents.        :
_____:
```
ARNOLD C. RAPOPORT
UNITED STATES MAGISTRATE JUDGE

<u>**REPORT AND RECOMMENDATION**</u>

In a Report and Recommendation dated September 14, 2006, I recommended that Michael Bookard's Petition for Writ of Habeas Corpus be denied with prejudice and dismissed without an evidentiary hearing because the Petition was untimely under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which amended 28 U.S.C. § 2244.  I also recommended that there was no basis for equitably tolling the AEDPA one-year statute of limitations.  Petitioner thereafter filed an Objection with the Honorable Timothy J. Savage.  By order of November 17, 2006, Judge Savage remanded the matter to the undersigned to address Petitioner's Objection regarding equitable tolling and the evidence Petitioner submitted in support thereof.  For the following reasons, I recommend that Petitioner has failed to demonstrate that the statute of limitations should be equitably tolled.  I also recommend, in the alternative, that the Petition

be denied on its merits.

## I.    <u>**FACTS AND PROCEDURAL HISTORY**</u>.[1]

On October 19, 2005, Bookard filed his original petition for habeas corpus under 28 U.S.C. § 2254 together with a statement in support of his request to proceed in forma pauperis.  Petitioner set forth two grounds for habeas relief.  First, he challenged the sufficiency and weight of the evidence.[2]  Petitioner also contended that trial counsel was ineffective for six reasons: 1) for failing to present alibi witness testimony; 2) for failing to contest his time in custody before he was given his <u>Miranda</u> warnings; 3) for failing to raise issues about defects in his statement to police; 4) for failing to request that a Commonwealth witness be treated as a hostile witness; 5) for questioning that witness on cross-examination about conversations she had with Petitioner after the crime; and 6) for failing to raise an excessive sentence issue.

In the original Report and Recommendation, after setting out the procedural history of Petitioner's state court proceedings, I determined that his AEDPA one-year statutory time period

---

[1]This information is taken from the Petition for Writ of Habeas Corpus, the Response thereto, Petitioner's Objection, and the attachments to those pleadings.

[2]He stated that "before granting arrest of judgment which goes to testing the sufficiency of the evidence, the trial court must find the evidence supporting the verdict to be so weak and inconclusive that a jury of a reasonable persons would not be satisfied as to the accused's guilt."

commenced on March 18, 2003, the date his conviction became final.  The statute of limitations was, however, tolled beginning on December 1, 2003, after 258 days had elapsed, by Petitioner's filing of a PCRA petition in state court.  That petition remained pending until June 18, 2005, thirty days after the Pennsylvania Superior Court affirmed its denial.  The federal statute of limitations began to run again with 107 days remaining.  It expired on October 2, 2005.  The instant Petition was not filed until October 19, 2005, some sixteen days late.

After setting out the relevant law on equitable tolling, I recommended that Petitioner was not reasonably diligent in filing his federal Petition because he had failed to allege any steps he took to timely file.  Thus, I recommended that the Petition be dismissed as time-barred.

In his Objection, Petitioner states that his Inmate Account Certification, dated September 16, 2005, indicates that he had only $5.49 in his account, which was not enough to pay the postage to send his Petition.[3]  He asserts that he was informed

---

[3]He asserts that, while his account balance at the time he was required to mail the Petition was $5.49, the cost of mailing was $9.74.  His account Certification, dated September 16, 2005, shows that Petitioner had the sum of $5.49 in his account at the Rockview State Correctional Institution.  The Certification also shows that Petitioner's average monthly wage is $44.87.  He was last paid his monthly wage on September 9, 2005.  Based on the prior pay intervals reflected in the Certification, his next pay day would have been approximately October 7, 2005, several days after the statute of limitations expired on his federal Petition.

that D.O.C. policy, which had changed as of September 6, 2005, prevented his mailing the Petition on time.  He also asserts that he was "told by staff to mail in petition in October, he was then denied for a second time on October 3, 2005, inmate pay roll was posted on 7th of October 2005, and Petitioner had not been granted access until October 14, 2005."[4]  Petitioner argues that he was denied due process by the DOC for denying him access to the courts.  Having reviewed the Petitioner's Objection and the attached documents, I recommend that his arguments are insufficient to satisfy the standards for equitable tolling of the AEDPA statute of limitations.

## II.  DISCUSSION – EQUITABLE TOLLING.

The United States Court of Appeals for the Third Circuit has determined that there are three circumstances where equitable tolling is permitted: 1) if the Respondent has actively misled the Petitioner; 2) if the Petitioner has in some extraordinary way been prevented from asserting his rights; or 3) if the Petitioner has timely asserted his rights in the wrong forum. Johnson v. Hendricks, 314 F.3d 159, 162 (2002); Jones v. Morton, 195 F.3d 153, 159 (3d Cir. 1999).  It is the Petitioner's burden to show these extraordinary circumstances and that he acted with

---

[4]He claims he was told by staff that his "certification had to be changed to fit the requirement for the last six months for informa pauperis reasons dated October 19, 2005."  The meaning and relevance of this statement are not clear.

reasonable diligence in filing his petition.  <u>Traub v. Folio</u>, No. 04-386, 2004 WL 2252115, at *2 (E.D. Pa. Oct. 5, 2004) (citing <u>Schleuter v. Varner</u>, 384 F.3d 69 (3d Cir. 2004).

  Petitioner's Objection arguably raises an issue that he was actively misled by prison officials or prevented from asserting his rights, in that he claims that staff members told him that "DOC policy had changed."  This "change," however, actually benefitted the Petitioner.  The Department of Corrections' Bulletin dated August 30, 2005, and made effective September 6, 2005,[5] states that "an indigent inmate may anticipate on his/her account for legal mail and copying charges of up to $10.00 per month." (DC-ADM 803, Inmate Mail and Incoming Publications Policy, p.11).  The Bulletin goes on to state:  "an inmate is responsible for managing his/her funds and monthly postage allowance to meet his/her legal needs."  (<u>Id.</u>)  Under this policy, Petitioner, had he requested it, could have borrowed the full amount of the postage, $9.74, for his legal mail.[6]  The Objection makes clear that Petitioner knew of the DOC policy, which would have helped, rather than hindered, his efforts to

---

[5]The Bulletin, attached by Petitioner to his Objection, is clearly the basis of Petitioner's assertion that "DOC policy had changed."

[6]We further note that Petitioner would have had monthly wages sufficient to pay for his legal postage, had he responsibly budgeted his resources.  We do not, however, make this a basis of our recommendation.

timely file his Petition.  As Petitioner makes no argument how
this policy change negatively impacted his ability to timely file
the Petition, it is recommended that Petitioner's equitably
tolling Objection be overruled.[7]

## III.  THE MERITS OF THE PETITION.[8]

Petitioner was charged on September 2, 1999, with Murder as
a capital offense, eight counts of Aggravated Assault and related
offenses.[9]  On December 6, 1999, a hearing was held on

---

[7]We note that Petitioner does not assert that the prison
staff improperly denied a request for an advance on legal postage
under the policy stated in the Bulletin.  We note too that
Petitioner had rights under the Bulletin to seek a review of such
a decision.  The Bulletin provides that the "inmate may appeal
any decision regarding this section" under the inmate grievance
process.  Accordingly, we recommend that no due process violation
could arise from the staff having incorrectly denied an initial
request for an advance on legal postage, even had Petitioner
actually made such a request.
Finally, Petitioner's contention, that he was denied by
staff to mail his petition on October 3, 2005, because "inmate
pay roll was posted on the 7th of October 2005, and Petitioner
had not been granted access until October 14, 2005," also refers
to his insufficient funds to pay the legal postage.  As
Petitioner had the opportunity to borrow funds in order to timely
mail his petition, the fact that he could not access his next pay
until October 14, 2005, is inconsequential to the equitable
tolling analysis.

[8]Although I recommend that the Petition be dismissed as
untimely, I discuss the merits of the Petition at the direction
of the District Court.

[9]The facts underlying Petitioner's convictions were related
by the Pennsylvania Superior Court as follows:

The charges against Bookard stem from an incident
that occurred at approximately 2:00 a.m. on September
1, 1999.  The victim, Demetrius DeShields, was standing
with a group of individuals in front of 241 Sansom

Petitioner's Omnibus Pre-Trial Motion seeking suppression of statements that Petitioner gave to police.  Petitioner also sought severance of the terroristic threat charges from his other charges.  The Honorable Charles C. Keeler of the Court of Common Pleas of Delaware County, Pennsylvania, presided over the hearing

---

Street in Upper Darby, Pennsylvania, when he was fatally shot.  A second victim was injured in the leg. No one saw the face of the individual who fired the shots, because he wore a mask.  During the course of their investigation, the police interviewed Nakia Sample, Bookard's ex-girlfriend and the mother of his child, who resided at 235 Sansom Street.  Sample told the police that earlier on the evening prior to the shooting, she received several threatening calls from Bookard, who told her, "I'm coming.  No one better be there.  If so, I am going to hurt both you all.  I am not playing.  I am going to ----- you and anyone else there when I get there."  (Trial Court Opinion, 5/16/01, at 3.)  Apparently, Bookard was upset over the fact that Sample was involved with another man, Anthony Anderson, who went by the nickname "Black", and who was standing in front of 241 Sansom Street when the shooting occurred.  Sample reiterated her statement at the preliminary hearing, although at trial she recanted her statement.

Following the shooting, Bookard gave a statement to the police in which he admitted that he had had several telephone conversations with Sample on the night of the shooting.  Bookard also admitted that on September 1, 1999, he fired shots in the area of 241 Sansom Street, but claimed that he did so only because someone drove up in a green Chevrolet Tahoe sports utility vehicle, exited, and began to shoot at Bookard. Bookard stated that when he was shot at, he began to run, and that while he was running, he pulled his gun and started shooting back.  None of the witnesses to the shooting, however, testified to seeing a green Tahoe in the area.

Commonwealth v. Bookard, No. 1080 EDA 2001 (Pa. Super. Feb. 11, 2002), slip op. at 1-3.

and denied all of Petitioner's pre-trial motions.

On July 19, 2000, the date set for trial, Petitioner's brother advised trial and penalty phase counsel that he had three potential alibi witnesses.  Judge Keeler therefore granted a trial continuance, but on July 21, 2000, counsel advised the court that no alibi witnesses would be called on Petitioner's behalf.  Thus, on July 24, 2000, selection of a death penalty-qualified jury began.  Jury selection was completed and the trial commenced three days later, on July 27, 2000.

On August 1, 2000, the jury found Petitioner not guilty of First Degree Murder but guilty of Third Degree Murder and four counts of Aggravated Assault.  Petitioner was also found guilty of Possessing a Firearm Without a License.  On October 2, 2000, Judge Keeler sentenced Petitioner to an aggregate term of forty to eighty years incarceration.[10]  Petitioner was represented by new counsel on direct appeal, who filed a Motion For Reconsideration Of Sentence.  On October 20, 2000, a hearing was held and the motion was denied.  On February 2, 2001, a hearing was held on Petitioner's Post-Sentence motions.  These motions were also denied.

---

[10]For the Third Degree Murder conviction, Petitioner was sentenced twenty to forty years; for his Aggravated Assault convictions, Petitioner was sentenced five to ten years on each count, each sentence consecutive to each other and consecutive to the Murder sentence; for his Possession of a Firearm Without a License conviction, Petitioner was sentenced to nine to twenty-four months, to be served concurrently.

In Petitioner's direct appeal of his convictions, he raised as issues that the weight and sufficiency of the evidence did not support the verdicts, trial counsel ineffectiveness,[11] and that the sentence was illegal.  The Superior Court affirmed the judgments of sentence on February 11, 2002.  Commonwealth v. Bookard, No. 1080 EDA 2001 (Pa. Super. Feb. 11, 2002).  Petitioner's petition for allowance of appeal before the Pennsylvania Supreme Court was denied, per curiam, by order dated December 18, 2002.

On December 1, 2003, petitioner filed a pro se petition for relief pursuant to the Pennsylvania Post-Conviction Relief Act.  See 42 Pa. C.S.A. § 9541, et seq.  Counsel was appointed and, thereafter, filed a "no-merit" letter.  After conducting its own review of the case, the PCRA court permitted counsel to withdraw on May 24, 2004.  The court offered petitioner twenty days to "provide specific reasons justifying further proceedings." Resp., Appx. 30, p. 2.  Petitioner sent a letter that the PCRA court found inadequate, and on June 25, 2004, the court dismissed the PCRA petition.  Resp., Appx. 29.  On May 19, 2005, the Pennsylvania Superior Court affirmed the dismissal of the

---

[11]Petitioner claimed that counsel was ineffective: 1) for failing to present an alibi defense; 2)for failing to investigate the crime scene; 3) for failing to contest the amount of time Petitioner was in custody prior to receiving a Miranda warning; 4) for failing to object to the direct examination of Commonwealth witness Nakia Sample; and 5) for failing to object to an illegal sentence.

petition.  Resp., Appx. 33.  Petitioner did not file a petition for allowance of appeal with the Pennsylvania Supreme Court.

    A.   **<u>STANDARD OF REVIEW</u>**.

    The merits of Petitioner's case must be decided pursuant to the terms of AEDPA.  Under AEDPA, habeas relief with respect to a claim adjudicated on the merits in state court is only available where the state adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); <u>see also</u> <u>Williams v. Taylor</u>, 529 U.S. 362, 412-13 2000).  The Supreme Court held in <u>Williams</u> that a state court decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law, or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." <u>Williams</u>, 529 U.S. at 413; <u>see</u> <u>Matteo v. Superintendent, SCI Albion</u>, 171 F.3d 877, 891 (3d Cir.1999) (holding that for a decision to be "contrary to" federal law, "Supreme Court precedent requires an outcome contrary to that reached by the relevant state court").  A state court decision represents an

unreasonable application of federal law where "the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

   B.  **SUFFICIENCY OF THE EVIDENCE**.

   Petitioner argues that habeas relief should be granted based on the sufficiency of the evidence argument he presented to the state courts regarding his third degree murder conviction.  In determining the sufficiency of the evidence, the Superior Court applied as its standard that an appellate court,

> viewing all the evidence and reasonable inferences therefrom in the light most favorable to the Commonwealth as the verdict winner, must determine whether the evidence was sufficient to enable the fact finder to find that all of the elements of the offenses were established beyond a reasonable doubt.

Commonwealth v. Bookard, supra, slip op. at 5-6.  The Supreme Court law applicable on habeas review of the sufficiency of evidence is Jackson v. Virginia, 443 U.S. 307, 316 (1979) (due process requires that a person can only be convicted of the crime with which he is charged by proof of every element of the criminal offense beyond a reasonable doubt); see also Sullivan v. Cuyler, 723 F.2d 1077, 1083-84 (3d Cir.1983) (holding that, in reviewing challenges to the sufficiency of the evidence, a court must determine "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of

-11-

fact could have found the essential elements of the crime beyond
a reasonable doubt.") (quoting Jackson, 443 U.S. at 319).  The
Third Circuit has held that the standard for reviewing the
sufficiency of the evidence is the same under both federal and
Pennsylvania law.  Evans v. Court of Common Pleas Delaware
County, 959 F.2d 1227, 1233 (3d Cir. 1992).  Having reviewed the
state record, I find that the state courts did not unreasonably
apply the Jackson standard.[12]  Accordingly, I recommend that the
state court's adjudication of the insufficiency of the evidence
argument was not contrary to applicable Supreme Court law.

   C.  **INEFFECTIVE ASSISTANCE OF COUNSEL**.

   The clearly established Supreme Court law governing claims
of ineffective assistance of counsel is Strickland v. Washington,
466 U.S. 668, 687 (1984), wherein the Court established a
two-pronged test to evaluate Sixth Amendment claims of
ineffective assistance of counsel.  An individual making such a
claim must show: (1) that "counsel's performance was deficient,"
which is measured by "reasonableness under prevailing
professional norms;" and (2) that counsel's "deficient

---

[12]Under Pennsylvania law, third-degree murder is a killing
done with legal malice but without the specific intent to kill
required in first-degree murder.  Commonwealth v. Kellam, 719
A.2d 792, 797 (Pa. Super. 1988).  Given Sample's testimony that
Petitioner threatened to come to her home and "hurt both of you"
because of her relationship with Anderson, the Superior Court's
finding that the Commonwealth established legal malice beyond a
reasonable doubt was not an unreasonable application of Jackson.

performance prejudiced the defense." Id. at 687-90.  The Pennsylvania court's decision on Petitioner's ineffective assistance claims was not contrary to, nor an unreasonable application of, the Strickland standard.

The Superior Court held that to establish ineffective assistance, "the defendant must prove that the underlying claim is of arguable merit, that counsel's course of conduct was without a reasonable basis designed to effectuate his interest and that he was prejudiced by counsel's action or omission in such a way that there is a reasonable probability that the outcome of the trial would have been different." Commonwealth v. Bookard, supra, slip op. at 11 (citing Commonwealth v. Wallace, 724 A.2d 916, 921 (Pa. 1999).  This standard has been found to be materially identical to the test enunciated in Strickland.  See Werts v. Vaughn, 228 F.3d 178, 203 (3d Cir. 2000).  The Third Circuit Court of Appeals has ruled that this standard is not "contrary to" Strickland, and therefore, "the appropriate inquiry is whether the Pennsylvania courts' application of Strickland to [petitioner's] ineffectiveness claim was objectively unreasonable, i .e., the state court decision, evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under Strickland." Werts, 228 F.3d at 204.

1.   **BOOKARD'S ALIBI DEFENSE**.

The adjudication of Bookard's ineffectiveness claims was not contrary to, nor was it an unreasonable application of, Strickland.  The Superior Court determined that Petitioner failed to demonstrate that he had a viable alibi defense because he failed to meet his evidentiary burden of coming forward with proof by affidavit indicating that an alibi witness was available and willing to testify at trial.  Commonwealth v. Bookard, supra slip op. at 12.  Thus, he could not show that the failure to present the defense created prejudice.  Id. (citing Commonwealth v. Days, 718 A.2d 797, 803 (Pa. Super. 1998) (holding that failure to call alibi witness must be prejudicial to defense; no relief may be granted on ineffective assistance claim based on failure to present alibi defense based on unsupported allegation that an alibi witness may have testified in the absence of an affidavit from that witness).  This lack of prejudice finding is not an unreasonable application of Strickland's requirement that counsel's deficient performance must prejudice the defense, and that the Petitioner has the burden to prove such prejudice.  See id. at 693.  Thus, it was correct for the Superior Court to place the burden of persuasion on the Petitioner.[13]  Since the court

_____

[13]The state court's finding of fact, that the Petitioner had failed to provide support for his claim, must be presumed to be correct.  See 28 U.S.C. § 2254(e)(1).  The Petitioner bears the burden of rebutting this presumption of correctness by clear and convincing evidence, see id., and he has not attempted to do so.

correctly allocated the burden of persuasion, its adjudication of the Petitioner's claim was not contrary to nor an unreasonable application of Supreme Court precedent.

### 2.   <u>BOOKARD'S OTHER INEFFECTIVE ASSISTANCE CLAIMS</u>.

Petitioner also argues that counsel was ineffective for failing to contest the time he was in custody before he was given <u>Miranda</u> warnings, for failing to object to the direct examination of Commonwealth witness Nakia Sample, and for failing to object to an allegedly illegal sentence.  The Superior Court determined, under Pa. R. A. P. 2119, that the first two issues were waived because Petitioner did not cite to any case law in support of his arguments.  <u>Commonwealth v. Bookard</u>, <u>supra</u>, slip op. at 12-13 (citing <u>Collins v. Cooper</u>, 746 A.2d 615, 619 (Pa. Super. 2000) (holding claim of error is waived under the Rule when "appellant has failed to cite any authority in support of a contention").  It determined that the sentencing issue was waived under Rule 2119(f) because Bookard did not set forth a concise statement of his reasons or articulate a substantial question as to the propriety of his sentence.  Petitioner's waiver in state court constitutes a procedural default in the federal habeas context.

Claims that have been procedurally defaulted cannot be reviewed by a federal court on habeas review "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate

that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991).  To satisfy the cause and prejudice requirement, courts have held that cause exists when a petitioner demonstrates "some objective factor external to the defense impeded efforts to comply with the State's procedural rule." Slutzker v. Johnson, 393 F.3d 373, 381 (3d Cir. 2004) (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)).  The cause must be "something that cannot fairly be attributed to the petitioner." Coleman, 501 U.S. at 753.  Prejudice means that the alleged error worked to the Petitioner's actual and substantial disadvantage. United States v. Frady, 456 U.S. 152, 170 (1982).  To show a fundamental miscarriage of justice, a Petitioner must present new evidence that he is actually innocent of the crime for which he has been convicted. Cristin v. Brennan, 281 F.3d 404, 412 (3d Cir. 2002). To establish the requisite probability of actual innocence, the Petitioner must show that "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." Schlup v. Delo, 513 U.S. 298, 327 (1995).  As Petitioner has failed to allege, let alone demonstrate, cause and prejudice or a fundamental miscarriage of justice, these ineffective assistance issues are procedurally defaulted.

Finally, Petitioner asserts claims of ineffective assistance of counsel based upon counsel's failing to raise issues about

defects in his statement to police, failing to request that Ms. Sample be treated as a hostile witness, and for questioning Ms. Sample during cross-examination about conversations she had with Petitioner after the crime.  The record reveals that none of these issues were raised in Petitioner's direct appeal or in his PCRA petition.  Thus, I recommend that they are technically exhausted because the time for presenting them has expired, but are procedurally defaulted with no assertion of cause and prejudice or miscarriage of justice.

For all of these reasons, I make the following:

## RECOMMENDATION

AND NOW, this 13th day of June, 2007, **IT IS RESPECTFULLY RECOMMENDED** that the instant Petition for Writ of Habeas Corpus should be **DENIED** with prejudice and **DISMISSED** without an evidentiary hearing.  There is no probable cause to issue a certificate of appealability.

BY THE COURT:


/s/ Arnold C. Rapoport
ARNOLD C. RAPOPORT
UNITED STATES MAGISTRATE JUDGE